FILED
U.S. DISTRICT COURT
[ILLEGIBLE] DIV.
2010 DEC 22 AM 11:03
CLERK
SO. DIST. OF GA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO.: CR510-22 |
| v. ) | |
| RICKY SMITH ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Ricky Smith ("Smith") is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Defendant filed a Motion to Suppress Evidence and Statements, to which the Government responded. The undersigned conducted an evidentiary hearing on this Motion on December 14, 2010, at which Waycross Police Department Officers Larry Hill ("Hill") and Jeffrey Nolan ("Nolan") and Smith testified.

## STATEMENT OF THE CASE

The credible testimony at the evidentiary hearing establishes the following:

Waycross Police Department received a call on May 8, 2010, about a fight in progress with weapons involved at 301 Fireman Street in Waycross, Georgia. Nolan was the first officer who arrived at the scene. Defendant staggered out of his apartment, followed by his next-door neighbor, the female victim. The victim yelled to

Nolan, "He's got a gun." Nolan pointed his weapon at Smith and gave him several commands to get on the ground. Smith ignored these commands and reached into his pockets. Nolan told Smith to get his hands out of his pockets slowly, which Smith did. However, Smith still ignored Nolan's commands to get on the ground. Nolan placed his firearm in his holster, handcuffed Smith, and advised dispatch to have his backup arrive more quickly. Sergeant Lee arrived, and both officers had to pick up Smith to get him into the back of Nolan's patrol car, because of Smith's size and because he was dragging his legs behind him. Nolan noticed a firearm was leaned against the stairs of Smith's apartment, but he did not retrieve the firearm because Nolan was dealing with the victims in this case.

When Hill arrived at the scene, Smith was sitting in the back of Nolan's patrol car. Hill went to the area of Smith's apartment and could see a firearm sitting four to five feet from the door through the glass door. Hill went to speak with Smith, identified himself, and asked Smith for permission to go into his house to get the firearm. Smith gave Hill permission to go into his apartment to get the firearm, and Smith told Hill his mother had given him the gun, it was not loaded, and there were .9mm ammunition rounds on the coffee table. Hill went inside the apartment to get the gun and the ammunition rounds, which were about two feet away from the gun and where Smith said they would be. Hill turned down Smith's radio, which was turned up to a very loud volume. Hill was inside Smith's apartment for no more than two minutes, and he denies searching the apartment or looking under anything.

Smith, through counsel, alleges that his consent was not voluntary and that, any evidence obtained as a result should be suppressed. Smith also alleges that any statements he may have made to police officers should be suppressed.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Consent to Search

Smith contends that Nolan pointed his service weapon at him and told him he would be shot if he did not comply with Nolan's commands. Smith asserts that Nolan's actions caused "a high state of fear and anxiety[.]" (Doc. No. 18, p. 2). Smith alleges that Nolan used force against him when placing him in handcuffs, which caused an injury to his knee. Smith also alleges Nolan noticed a strong odor of alcohol coming from him, and Nolan also noticed Smith was unsteady on his feet with bloodshot, glassy eyes. Smith further alleges he was never advised he had the right to refuse to consent to the search of his residence.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. However, an exception to the general rule against a warrantless search is a search made pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent must be freely given, and the totality of the circumstances determines whether the consent was knowingly and voluntarily given. United States v. Ramirez-Chilel, 289 F.3d 744, 752-53 (11th Cir. 2002).

3

Smith's consent to search was knowingly and voluntarily given under the totality of the circumstances. Nolan stated that he thought Smith was intoxicated because Smith staggered out of his apartment, his eyes were glassy, and Nolan could smell the odor of alcohol. However, Nolan and Hill both testified that Smith was responsive to questions they asked him, and Nolan testified that Smith specifically denied the female victim's statement that he pointed a gun at her. Nolan and Hill also testified that Smith seemed alert and calm, there was nothing unusual about his speech, Smith showed no signs of being unable to understand what was being said to him, and he did not show signs of extreme intoxication. Nolan and Hill further testified that Smith did not complain or exhibit any signs of being in pain. In addition, Hill stated that he approached Smith, identified himself, and told Smith he saw the gun in the apartment through the glass door. Hill denied telling Smith he would tear up the apartment, making any threats, or telling Smith he would go get a warrant if Smith did not consent to the search. Further, to the extent Smith alleges that having a weapon pointed at him contributed to the alleged involuntariness of his consent, this assertion is without merit. Nolan had holstered his weapon several minutes prior to Hill asking Smith for consent, and it does not appear that Nolan was near Smith at the time Hill asked for consent.

The undersigned notes Smith's testimony at the hearing but does not find it credible.[1] For instance, within about 30 seconds' time, Smith stated Hill made a threatening comment to him, denied Hill made the comment, and then stated Hill made

---

[1] An evidentiary hearing was conducted on Smith's Motion to Suppress so that the undersigned could make credibility determinations and develop the facts of this case. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). As the fact finder at the evidentiary hearing, the undersigned had the opportunity to observe the witnesses and their demeanors and to hear their testimony. Smith's testimony was contradictory in several instances, as well as by his Affidavit.

AO 72A
(Rev. 8/82)

the comment to him. Smith testified that he told Hill he did not have a gun, but he also testified that he told Hill the gun was behind the door and was unloaded. Smith admitted to his original denial of having a gun and his later admission of the gun being behind the door in an Amendment to his Affidavit. (Doc. No. 24). Smith stated he had taken a Loracet for the pain he was experiencing, yet he denied having anything alcoholic to drink, despite the testimony of two (2) police officers with nearly 25 years' combined experience that he was intoxicated and his Affidavit declaration that he was "disoriented due to extreme alcohol intoxication[.]" (Doc. No. 18-3, ¶ 9). Smith testified that he never gave Hill consent to enter his apartment to retrieve the gun; however, in his Affidavit, Smith declares that the consent to search given to Hill "was not voluntary." (Id.). Finally, Smith testified he knew he could refuse to give consent, though he stated in his Affidavit that he believed he had no right to refuse to give consent. (Id. at ¶ 10).

In light of the above and under the totality of the circumstances, Smith's consent was given knowingly and voluntarily. This portion of Smith's Motion to Suppress should be **denied**.

II. **Statements**

Smith contends that any statements he may have made after his arrest should be suppressed, as he was not advised of his Miranda rights.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into

custody or otherwise deprived of his freedom of action in any significant way." Id. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.

"[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). However, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." Id. at 301-02 (emphasis in original). "Volunteered statements are not barred by the [F]ifth [A]mendment." United States v. Satterfield, 743 F.2d 827, 849 (11th Cir. 1984). "Incriminating statements made in the course of casual conversation are not products of a custodial interrogation." Id.

The evidence before the Court reveals that neither Nolan nor Hill advised Smith of his Miranda rights. However, this evidence also reveals there was no reason for either of the officers to do so. The only question asked of Smith was whether Hill could go into his apartment and retrieve the gun which was visible by looking into the glass door to the apartment, and this does not require Miranda warnings. There is no evidence Hill or Nolan asked Smith anything else. Rather, after knowingly and voluntarily consenting to the search of his apartment for the retrieval of the gun, Smith volunteered the information that his mother gave him the gun, it was unloaded, and

AO 72A
(Rev. 8/82)

there was some ammunition on the coffee table. To the extent these are the statements Smith asserts should be suppressed, this portion of his Motion should be **denied**.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Smith's Motion to Suppress Evidence and Statements be **DENIED**. At trial, the Government should be entitled to use all physical evidence recovered from 301 Fireman Street and any statements Smith made.

**SO REPORTED** and **RECOMMENDED**, this 22nd day of December, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)